Ruffin, C. J.
 

 Until the case of
 
 Hamilton
 
 v.
 
 Adams, 2
 
 Murph. 161, it was understood, that the law here was the same as in England, and that the execution not only justified the sheriff, but that the purchaser under it need shew, nothing more, as against the defendant himself, or one coming in after the lien of the execution attached.
 
 Lake
 
 v.
 
 Billers,,
 
 1 Ld. Raymond, 753.
 
 Dobson
 
 v.
 
 Murphey,
 
 1 Dev. & Bat. 591. It was a rule of convenience, and also of policy, for the safety of purchasers, and thereby to induce a confidence in bidding and buying, at a fair price. But in the case first mentioned, it was held, nearly forty years ago, that a purchaser must shew a judgment as well as an execution, and that has been followed ever since, though the reasoning in the case is certainly not satisfactory. It is, that it was a sacred, and, indeed, a constitutional, right of every man, to have notice, and the opportunity of defence, before he should be concluded, and therefore that there must be a judgment; and it was thence inferred, that the record of the judgment must be produced by a purchaser, as the only evidence of it, since
 
 *146
 
 it could not be presumed from the ministerial act of the clerk, in issuing the execution, and it would not be material, whether it existed or not, if it were not required to be shewn in some manner. This will appear the more singular, when it is considered, that the same reasoning, so far as the judgment is necessary to give validity to the execution against the defendant, embraces the case of the sheriff, as well as the purchaser ; for it is clear that the officer can no more justify under a void process, than the purchaser can deduce title through it. Yet it has never been questioned, that the sheriff is justified by the writ alone ; but, on the contrary, the affirmative has been constantly held here, as in England.
 
 Weaver
 
 v.
 
 Cryer,
 
 1 Dev.
 
 337. Farley
 
 v.
 
 Lea,
 
 4 Dev. & Bat. 169, But the truth is, that the principle of hearing a person, before passing on his rights, was always as sacred as it is prtrw, and strictly observed at the common law.. There is no doubt, then, that the law requires a judgment to support an execution. Yet, it does not follow, that the judgment must be proved by the production of the record, on the trial of a suit for the property sold under the execution. For, although the acts of a creditor in suing, and of a ministerial officer in issuing, the execution, do not, of themselves, authorise a presumption, that there is a corresponding judgment, there are, yet, other things in every ease, from which there is a fair and almost necessary presumption of the existence of a judgment. The}’ are, the power and duty of the Court, from which the process emanated, to set it aside, and the omission of the party to have it set aside. Undoubtedly the Court would, at the instance of the defendant, set aside the execution, if there Wjere no judgment. Even if there be one, yet if the execution did not conform to it, and a prejudice appeared to have arisen to the debtor from the variance, the Court Would be bound, in that case also, to set it aside. As if there had been a judgment for fió,, and a
 
 fieri facias
 
 
 *147
 
 be taken out for $1000, so as to cause, for its satisfaction, the sale of a valuable tract of land or several slaves, instead of a cow or some other trifling article. The question then, really, was only in what manner advantage was to be taken of the want of a judgment or of a variance between it and the execution. The ancient rule was founded on the idea, that such a question was most proper for the Court, whose process had been abused, because it would there be presented directly, and justice could be done all around — to the sheriff, the parties and the purchaser — by setting aside the execution or amending it, on such terms as would save the first harmless for obeying the writ, and would either secure to the last the property bought by him, or restore to him his money forthwith. That is a much more convenient method of determining the validity of the execution, so far as it is dependent upon the validity of the judgment, rather than allow it to come up incidentally in ejectment or trover, whereby the debtor often contrives to have his debt paid out of the proceeds of the property sold, and still keeps the property and puts the purchaser to another action for the money ; which is seldom available, by reason of the ultimate insolvency of the debtors. However reasonable those views seem, it was, nevertheless, resolved in
 
 Hamilton
 
 v.
 
 Adams,
 
 that the purchaser must produce the record of the judgment in support of his title, and subsequent Judges felt bound by the decision, as an authority. It was considered to follow, necessarily, that the judgment, in order to have the effect of sustaining the execution, must be such a one as authorised it, for, if it did not, it seemed to be much the same, as if no judgment were shewn. The inconveniences of thus following out the principle of the case mentioned were numerous and mischievous, defeating many fair purchasers at sheriff’s sales upon frivolous objections, down to the June Term 1848, in the case of
 
 Collais
 
 vs
 
 McLeod,
 
 8 Ire. 221. They have at last beers
 
 *148
 
 deemed so grave, as to induce the legislature at the session of that year to pass the act, ch. 53, “to secure the title of purchasers of land sold under execution which declares, that, when land had been sold or might thereafter be sold, by virtue of any writ of execution, commanding the sale thereof, no variance between the execution and the judgment, whereon it was issued, either in the sum, or in the manner in which, or in the time when, it is due, shall invalidate the title of the purchaser. From the terms of the Act. the circumstances under which it was passed, and the policy it is calculated to advance, it seems to have been obviously the intent of it, or, ,at least its necessary construction, tore-instate the rule of the common law, of which we have been speaking. Hence, although land alone is mentioned in the act, it seems to be the unavoidable interpretation of it, that the sales of personalty under execution must, in like manner, be upheld, as being within the mischief. The Act cannot be regarded as enacting a thing new, out and out, and therefore to be strictly construed. But it is rather directed at a particular adjudication, and to be restorative of the common law, to the full extent reached by that principle. So, with respect to the question in this case, the Act gives validity to executions, upon a presumption of a proper judgment, or without regard to certain variances between the judgment and execution. And from those considerations, we think it is apparent, that the particular variances specified are set down in the Act, as examples of such as it was meant should not hurt the process. For, such as that existing here, in not precisely following in the execution the names of the plaintiffs in the suit, stands upon the like reason with those particularly mentioned in the Act, and must be considered within the purview of a statute, so obviously intended to be highly remedial. It is not supposed, that an execution, between entirely different persons from the parties to the
 
 *149
 
 judgment, could be held sufficient. But when the variance is apparently the misprision of the clerk, and' enough is seen in it to satisfy the Court, that it was meant for an execution on a particular judgment and between the parties to it, as if the names were very nearly the same, and the execution was acted on and returned, enrolled and certified as a part of the record of that suit. If that were not the truth, it must be supposed the persons affected by it would procure it to be set aside. The subsistence of the execution, therefore, under such circumstances, affords a presumption, whenever it is impeached collaterally, that it is a legal and proper one. Therefore, in effect, no judgment need now be shewn in a suit between the. defendant in the execution, or one bound by its
 
 teste,
 
 and the officer or purchaser; at all events, if the latter be not the plaintiff in the execution. That question, however, is necessarily restricted to a controversy between those persons. As against one, claiming under a prior conveyance from'the debtor, the judgment is to be shewn for another purpose.' As the debtor’s alienee is a stranger to the proceedings, and the prior conveyance to him must stand, unless it be successfully impeached as being in.fraud of a creditor, the judgment is indispensable, as evidence, that it has been judicially established, that the plaintiff in the execution was a creditor, within the Act of 1715, as was held in the case of
 
 Lake
 
 v.
 
 Billers,
 
 and all the cases since. Then it is to be considered, whether a variance in that case, between the judgment and execution, will avoid every thing done under them. We suppose, certainly, that it will not, provided enough appears, as before mentioned, to enable the Court to see, with rea sonable certainty, that, in fact, the execution was issued on and intended to enforce the particular judgment. That seems tobe the settled rule in New York, without any statute, and upon the reasonable idea, that, the process being amendable, ought not collaterally to be held void.
 
 *150
 

 Jackson
 
 v.
 
 Walker,
 
 4 Wend. 462,
 
 Swan
 
 v.
 
 Sadlewise,
 
 8 Wend. 676. Much more must it be so ruled under the Act of 1848, unless, upon no fair intendment, ihe Court could infer, that the variance arose from the misprision of the clerk, but would be obliged to suppose it the wilful disposition of the officer or of the party to oppress the debtor; and it seems to the Court, that the present case, in which the judgment was in the names of three persons, upon a security given them as a firm, and the execution runs in the name of the firm, or nearly so, and for the proper amount, and the judgment and execution are sent in one record, as belonging to each other, must be within the Act, if any case can be so held, or the Act is to have any operation.. Indeed, the cases, in which the question most frequently occurs, are those, in which the purchaser attacks a previous conveyance for fraud : and, therefore, it must be understood, that the legislature had those cases mostly in contemplation. As the trial of this cause was after the Act was in force, the variance did not impair the lessor of the plaintiff’s title ; and therefore the judgment was erroneous and must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per Curiam.
 

 Judgment reversed and a
 
 venire de nova
 
 awarded.